**Samuel S. SONG, Plaintiff–Appellant,**

v.

**IVES LABORATORIES, INC.,
Defendant–Appellee.**

**No. 394, Docket 91–7621.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 30, 1991.

Decided Feb. 25, 1992.

Raymond F. Gregory, New York City (Raymond G. Gregory, of counsel), for plaintiff-appellant.

David Dunn, New York City (Suzanne M. Reisman, Davis, Markel & Edwards, of counsel), for defendant-appellee.

Before OAKES, Chief Judge, FEINBERG and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiff-appellant Dr. Samuel S. Song appeals from a judgment *non obstante veredicto* ("judgment n.o.v.") entered in the United States District Court for the Southern District of New York (John S. Martin, Jr., *Judge*), which overturned a jury finding that Song's termination by his former employer, Ives Laboratories, Inc. ("Ives"), constituted unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and New York State Human Rights Law, N.Y.Exec.L. § 296 ("Executive Law § 296"). As an alternative holding, the district court set aside the jury verdict and ordered a new trial.

In the underlying action, Song charged that Ives violated Title VII and Executive Law § 296 by failing to offer him certain pay increases and bonuses, and ultimately by terminating him from his position, as a result of his Korean national origin. After a jury trial before Judge Martin, the jury found by special interrogatories that Ives had not discriminated against Song when it denied him salary increases and bonuses in 1981 and 1982, but that Ives' decision to terminate Song in 1983 did constitute unlawful discrimination based on anti-Korean animus. On post-trial motions by Ives, the district court entered judgment n.o.v. with respect to Song's termination claim, determining that "there is no basis on which a reasonable person could conclude that Dr. Song's job performance was satisfactory or that circumstances suggest that his national origin was a factor in the defendant's decision to terminate his employment." As an alternative holding, the district court set aside the jury verdict and ordered a new trial. Song now appeals.

For the reasons set forth below, we reverse the judgment n.o.v., affirm the alternative holding granting a new trial, and remand for a new trial consistent with this opinion.

## BACKGROUND

Dr. Samuel S. Song, a Korean national, joined defendant Ives as an Associate Medical Director in May of 1975. Song, a Korean-trained cardiologist, performed over twenty cardiovascular research studies on behalf of Ives between 1975 and 1981. During this period, Song received annual salary increases and incentive stock awards, as well as biennial stock options.

In 1981, Song's supervisor, Dr. Clarence Denton, grew dissatisfied with Song's performance and abrasive demeanor. Denton brought these complaints to the attention of Ives management. On July 30, 1981, management representatives of Ives and its parent company, American Home Products Corporation, met to discuss Song's dismissal. At this meeting, the representatives discussed, among other things, Denton's complaints regarding Song's bad temper, poor interpersonal skills, and inability to take direction from superiors. After reviewing Song's qualifications, performance and personality, as well as noting his ethnic origin, the representatives at the meeting concluded that Song should be explicitly warned of his shortcomings.

Several months later, in December 1981, Denton and Dr. Alfred Ling, Ives' Vice-President for Clinical Research, confronted Song and discussed with him the areas in which his job performance was unacceptable. In particular, Ling and Denton criticized Song's attendance, productivity and poor working relationships with other Ives employees. They also informed Song that on the basis of this unsatisfactory review, he would not be receiving any pay increase for the coming year. This verbal critique was memorialized in a detailed memorandum from Ling and Denton to Song, dated January 11, 1982. Among other things, the memorandum warned that Song must rectify his poor relationship with Denton, mistreatment of his secretaries and Clinical Research Assistants ("CRA's"), condescending attitude toward colleagues, and failure to make creative contributions on the projects of other Ives physicians. Song sent a reply memorandum to Ling and Denton in February 1982 rebutting the criticisms against him.

After Ives management delivered the January 11, 1982 memorandum, it did not issue Song any further formal performance

critiques. Nevertheless, throughout 1982 and 1983, Ives did not award Song any increases in compensation or incentive bonuses, as it customarily had done prior to January 1982. When Song asked why he was denied these bonuses, Denton told Song that his attitude had not yet improved. At the end of 1982, Ives once again refused to offer Song a pay increase for the new year.

In September 1983, Ling, acting at the behest of Song's new supervisor, again recommended to Ives management that Song's employment be terminated. In a memorandum to the President of Ives, Ling pointed to only two bases for Song's termination: Song's "[c]ontinued difficulty working with ... the secretarial staff, and ... clinical research associates," and, his "[p]ersistent lack of ability to work and communicate with his peers." Although Ling also noted that Song "offer[ed] little, if any, input during meetings[,] fail[ed] to demonstrate any enthusiasm for his work[,]" and made a contribution to Ives which was "negligible at best," he did not reiterate any of the other problems cited in the January 11, 1982 memorandum. Indeed, Ling specifically based his recommendation of discharge on Song's failure to improve his relationships with his peers and subordinates, since he had previously been criticized for this shortcoming. Acting on Ling's recommendation, Ives management authorized Song's termination in September 1983. Song was subsequently removed from the payroll on December 31, 1983.

In May 1984, Song filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC"). In March 1986, the EEOC determined that there was "no reasonable cause to believe" that Song's termination was the product of unlawful discrimination and thus issued Song a right-to-sue letter. Song then commenced the underlying action under both Title VII and Executive Law § 296, alleging employment discrimination based on his Korean origin.

At trial, Song offered a substantial amount of evidence to support his contention that his job performance was satisfactory, i.e., that he had good relationships with his co-workers, and that his termination was based on anti-Korean animus. Several of Song's former co-workers testified that they had enjoyed professional and amicable relationships with Song. Song also produced Denton's deposition, which stated that although Denton had recommended Song's discharge in 1981, he felt it was no longer warranted in 1983. Moreover, Charles Beach, Ives' Treasurer at the time of Song's termination, testified that Song had been discharged for "lack of adaptability," a phrase which, according to Beach, had no particular meaning, but was used when Ives wanted "to get rid of somebody."

As evidence that his discharge was motivated by anti-Korean animus, Song testified that Ling, who is Chinese, was prejudiced against Koreans. This assertion was corroborated by the testimony of Dr. Atul Laddu, a former Ives employee, who stated that at one meeting, Ling berated Song and two other Korean doctors for no apparent reason and that at another meeting Ling openly declared that "these Koreans are stupid people." Song argued that such anti-Korean prejudice was communicated to the management representatives who attended the July 30, 1981 meeting at which Song's discharge was discussed. Indeed, one representative taking notes at the meeting had written, "Korean military—authoritarian," a reference to Song's military service that Song argued was based on a prejudicial stereotype.

In contrast, Ives offered as its rationale for Song's termination his continued difficulty in working with his colleagues and those assigned to him. To support this claim, several Ives employees testified that Song mistreated his secretaries and CRA's. Additionally, Ives pointed to Song's admission that on at least two occasions after he received the January 11, 1982 memorandum, he had been informally criticized for continuing to mistreat his support staff. Ives denied that anti-Korean animus played any role in Song's termination, characterizing Ling's comments as "stray remarks." Moreover, Ives argued that the notation referring to Song's military training was

based on the statements of an Ives executive who retired soon thereafter and played no part in the decision to discharge Song.

In sum, the jury was presented with conflicting testimony concerning Ives' stated reason for Song's termination—his alleged inability to work with others. Indeed, although Ives presented substantial evidence of friction between Song and his co-workers, all of this evidence was controverted by co-workers reporting no such friction.

After deliberation, the jury found by special interrogatory that Song had not "proved that Ives Laboratories would have granted him wage increases and MIP awards in 1981 and 1982 but for the fact that he was of Korean origin." The jury did find, however, that Song had "proved by a preponderance of the evidence that Ives Laboratories would not have discharged him in 1983 but for the fact that he was of Korean origin."

After the jury returned its verdict, Ives moved for a judgment n.o.v. on the issue of discriminatory discharge, contending that no reasonable juror could have concluded that Song had carried his burden of establishing discrimination. *See* Fed.R.Civ.P. 50. The district court agreed, finding that it was impossible for a reasonable juror to conclude that Song's job performance was satisfactory and that he was discharged under circumstances suggesting that national origin was a factor. Consequently, the district court entered judgment n.o.v. in favor of Ives. As an alternative holding, the district court conditionally granted Ives' motion for a new trial. *See id.*

This appeal followed.

### DISCUSSION

**I.** *Song's Title VII and Executive Law § 296 Claims*

On appeal, Song contends that the district court erred in granting judgment n.o.v. because the evidence he presented at trial was sufficient to meet his burden in establishing unlawful discrimination. In order to review Song's claim, we must initially consider the plaintiff's burden of

proof in establishing a claim of discriminatory discharge.

It is well-settled that to establish a *prima facie* case of discriminatory treatment based on national origin in a Title VII action, the plaintiff must show: (1) that he or she is a member of a protected class; (2) that he or she satisfactorily performed the duties required by the position; (3) that he or she was discharged under circumstances suggesting that national origin was a factor; and (4) that the employer hired or sought other applicants for the position. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Lopez v. Metropolitan Life Insurance Co.*, 930 F.2d 157, 161 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 228, 116 L.Ed.2d 185 (1991); *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

Once a plaintiff has established a *prima facie* case of discriminatory treatment, the burden shifts to the defendant to articulate a non-discriminatory, legitimate business reason for the alleged discriminatory action. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant can meet this burden with sufficient specificity, the onus returns to the plaintiff, who ultimately must establish by a preponderance of the evidence that the nondiscriminatory reasons proffered by the defendant are a pretext for discrimination. *See, e.g., id.* at 804, 93 S.Ct. at 1825; *Rosen v. Thornburgh*, 928 F.2d 528, 532 (2d Cir. 1991); *Lopez*, 930 F.2d at 161. The plaintiff's burden of proving pretext thus merges with the ultimate burden of proving discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). We note that the burden shifting analysis set forth in *McDonnell Douglas* should not be construed as "rigid, mechanized, or ritualistic," but as "a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Construction Corp. v. Waters*, 438

U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

■ New York state courts have adopted the above analysis for discrimination actions arising under the New York State Human Rights Law. *See, e.g., Matter of Miller Brewing Co. v. State Div. of Human Rights,* 66 N.Y.2d 937, 939, 498 N.Y.S.2d 776, 778, 489 N.E.2d 745, 747 (1985); *O'Connor v. Frawley,* 573 N.Y.S.2d 675, 676 (1st Dep't 1991); *Ioele v. Alden Press, Inc.,* 145 A.D.2d 29, 35, 536 N.Y.S.2d 1000, 1003 (1st Dep't 1989). Therefore, Song was required to prove the same four essential elements to establish both his state and federal discrimination claims.

a. Judgment N.O.V.

■ We now consider whether, based on the evidence adduced at trial, judgment n.o.v. was appropriate. Judgment n.o.v. should be entered when "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir. 1970). Put differently, for judgment n.o.v. to be granted, there must be "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or ... such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." *Mattivi v. South African Marine Corp.,* 618 F.2d 163, 168 (2d Cir.1980); *see also Vasbinder v. Ambach,* 926 F.2d 1333, 1340 (2d Cir.1991); *Newmont Mines Ltd. v. Hanover Ins. Co.,* 784 F.2d 127, 132 (2d Cir. 1986). To determine whether the district court properly granted judgment n.o.v. in this action, we must therefore consider whether, under the *McDonnell Douglas* analysis, a reasonable juror could have concluded that Song established a case of discrimination. This Court reviews *de novo* the grant of judgment n.o.v. *See Sarus v. Rotundo,* 831 F.2d 397, 400 (2d Cir.1987).

■ Initially, we note that the district court acknowledged that a reasonable jury could find Song had satisfied the first and fourth prong of the *McDonnell Douglas* test. As a Korean native, Song was a member of a protected class. Further, because Ives reassigned Song's duties to recently hired employees, it was reasonable to infer that Ives replaced Song. The court therefore predicated its grant of judgment n.o.v. on Song's inability to establish the remaining two prongs—namely, that he satisfactorily performed his duties, and that his discharge arose under circumstances indicating that national origin was a factor. Moreover, the district court concluded that even if Song were found to have established a *prima facie* case, judgment n.o.v. would still be appropriate because Song failed to prove that Ives' stated reason for his discharge—Song's inability to work well with his colleagues and subordinates—was a pretext for discrimination. We disagree with the district court's analysis.

Although in 1981 a variety of reasons were offered for Song's termination, Ives ultimately rested its 1983 termination decision on Song's poor interpersonal relationships with his colleagues and subordinates. At trial, however, Song produced evidence that his relationships with his co-workers were amicable and professional. Ives countered with evidence that Song was overbearing toward some of his co-workers. The jury was free to credit or reject any of the testimony presented in arriving at a conclusion as to whether Song's performance in this regard was satisfactory. In short, it was well within reason for a jury to conclude that Song's treatment of his co-workers and consequently, his job performance, was satisfactory.

The central issue before the jury, was not however, whether Song worked well with some or all of his co-workers, but whether the stated reason for his termination was a pretext for discrimination. Contrary to the district court's conclusion, we find that a reasonable jury could have determined that Song adduced sufficient evidence of discrimination to sustain the

burden of proving a *prima facie* case and of proving pretext.

To be sure, the evidence of discrimination presented by Song was thin. However, as we have recently noted, a plaintiff charging discrimination against an employer rarely comes to court with a "smoking gun." *See Rosen,* 928 F.2d at 533; *see also Hollander v. American Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir.1990); *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1112 (2d Cir.1988). Simply stated, a victim of discrimination is "seldom able to prove his or her claim by direct evidence and is usually constrained to rely on the cumulative weight of circumstantial evidence." *Rosen,* 928 F.2d at 533.

Song presented evidence that Ling, a primary mover in the decision to terminate his employment, was biased against Koreans. Furthermore, at a meeting discussing his termination, Song was described as a former member of the Korean military who was "authoritarian." This evidence, when viewed against the backdrop of the other testimony offered, could fairly support the inference that Ives' decision to terminate Song was motivated by impermissible anti-Korean discrimination. For this reason, we can not conclude that the verdict in Song's favor was the result of "sheer surmise or conjecture." Because a district court can not make determinations of credibility in ruling on a motion for judgment n.o.v., where, as here, reasonable persons may differ as to the conclusions to be drawn from the evidence, the grant of judgment n.o.v. was improper.

b.  New Trial

We next consider whether the district court erred in granting Ives a new trial. A motion for a new trial should be granted when, in the opinion of the district court, "the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice." *Smith v. Lightning Bolt Productions, Inc.,* 861 F.2d 363, 370 (2d Cir.1988); *see also Newmont Mines Ltd. v. Hanover Ins. Co.,* 784 F.2d 127, 132 (2d Cir.1986); *Mallis v. Bankers Trust Co.,* 717 F.2d 683, 691 (2d Cir.1983); *Bevevino v. Saydjari,* 574 F.2d 676, 684–85 (2d Cir.

1978). Unlike a judgment n.o.v., a new trial may be granted even if there is substantial evidence to support the jury's verdict. *See Bevevino,* 574 F.2d at 683. In contrast to the standard applied in considering a motion for judgment n.o.v., a trial judge hearing a motion for a new trial "is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner." *Id.* at 684. Consequently, we will reverse a district court's decision to grant or deny a motion for a new trial only for an abuse of discretion. *See, e.g., Smith v. Lightning Bolt Productions,* 861 F.2d at 370; *Saloomey v. Jeppesen & Co.,* 707 F.2d 671, 679 (2d Cir. 1983); *Bevevino,* 574 F.2d at 683–84.

Based on the facts already discussed, we can not conclude that the district court's decision to grant a new trial was an abuse of discretion. As already noted, the evidence of Ives' discriminatory motive was thin, consisting of several remarks made by Ling, and notations made referring to Song's alienage and military service. The district court could fairly have concluded that Ives effectively rebutted the inference of discrimination that Song associated with these events. Additionally, because the evidence of Song's unsatisfactory job performance rested almost entirely on the testimony of Song's co-workers regarding his allegedly poor inter-personal skills and professional relationships, the district court was in a unique position to assess the credibility of the witnesses and to determine the weight which should be accorded their testimony. We therefore conclude that the district court's alternative holding was not in error.

II.  *The Jury Issue On Remand*

As already noted, Song's discrimination claim in the present case is based on Title VII and Executive Law § 296. It is well established that because the relief traditionally available under Title VII is equitable in nature, such actions are tried to the court. In contrast, because Executive Law § 296 permits the recovery of monetary damages, claims made in federal court under this provision are characterized as legal in nature and are tried to a jury, in accordance with the federal prac-

tice requiring jury trial in all actions at law. *See Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 473, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510, 79 S.Ct. 948, 956, 3 L.Ed.2d 988 (1959). Accordingly, Song's Executive Law § 296 claim was tried to the jury and his Title VII claim was tried to the court.

An issue therefore arises on remand as to whether a district judge sitting at equity in a Title VII case must conform his or her findings to those the jury renders sitting at law on an Executive Law § 296 claim. As a result of its grant of judgment n.o.v., the district court did not address this issue during the trial.

Initially, we note that since this appeal was filed and argued, Congress enacted the Civil Rights Act of 1991 which affords plaintiffs a right to jury trial in Title VII actions. *See* Civil Rights Act of 1991 at § 102, Pub.L. No. 102–166, 105 Stat. 1071 (1991). If the Civil Rights Act of 1991 applies, then a jury will render a verdict on both claims. Because the applicability of the Civil Rights Act of 1991 has not been properly briefed and argued, we do not consider whether the law applies retroactively to cases, such as this one, now pending before this Court. Thus, we must consider whether if the new legislation does not apply retroactively, the district court's decision on the Title VII claim must conform to the jury's verdict on the Executive Law § 296 claim.

It is clear that a judge sitting at equity may not render a verdict which is inconsistent with that of a jury sitting at law on a claim involving the same essential elements. This is because "[w]hen legal and equitable actions are tried together, the right to a jury in the legal action encompasses the issues common to both." *Lincoln v. Board of Regents of Univ. Sys.,* 697 F.2d 928, 934 (11th Cir.) (citing *Dairy Queen,* 369 U.S. at 470–73, 82 S.Ct. at 896–97, *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983).

We thus consider whether the elements of a claim under Title VII and Executive Law § 296 are so similar that a finding in favor of the plaintiff on one claim necessi-

tates a finding for the plaintiff on the other claim. As the Supreme Court has noted, "[t]he elements of a successful employment discrimination claim" under Executive Law § 296 and Title VII are "virtually identical," such that a finding against a plaintiff on the state claim precludes a finding for the plaintiff on the federal claim. *See Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 479–80, 102 S.Ct. 1883, 1896, 72 L.Ed.2d 262 (1982). In light of New York's wholesale adoption of federal standards in discrimination cases under Executive Law § 296 claims, we find that the converse is also true. Therefore, a district court sitting at equity in a Title VII action must resolve the Title VII claims in accordance with the jury's determination on the Executive Law § 296 claim. *See In re Lewis,* 845 F.2d 624, 629 (6th Cir.1988).

## CONCLUSION

In light of the foregoing, we hold that although a reasonable jury could have concluded that Song's termination was based on impermissible discrimination, it was not an abuse of discretion for the district court to set aside the jury's verdict and order a new trial. We therefore reverse the district court's grant of judgment n.o.v., affirm its alternative holding granting a new trial, and remand for a new trial consistent with this opinion.