Isabel OTERO

v.

**HOUSING AUTHORITY OF THE CITY OF BRIDGEPORT, et al.**

**No. CIV. 3:98CV1935(PCD).**

United States District Court, D. Connecticut.

May 15, 2003.

John T. Bochanis, Daly, Weihing & Bochanis, Bridgeport, CT, for Isabel Otero, plaintiff.

Thomas P. O'Dea, Jr., Halloran & Sage, Westport, CT, for Bridgeport Housing Authority, Clarence Craig, Joseph Papa, Jose Colon, Roy Boyd, Anita Wells, Earl Mellow, defendants.

### ORDER RE: PENDING MOTIONS

DORSEY, District Judge.

Pending, by reason of the granting of defendants' Motion for Judgment as a Matter of Law, but revived by reason of the mandate of the Court of Appeals, are:

(1) Defendants' Motion of a New Trial or for Modification of Judgment

(2) Plaintiff's Motion for Front Pay, Interest, Attorney Fees and Costs

The jury verdict, on plaintiff's claim of denial of due process, was in the amount of $145,900 without itemization. The motions will be discussed seriatim.

### I. Motion for New Trial

Defendants principally assert the verdict's reflection of the jury's disregard of the evidence. While the prior grant of defendants' Motion for Judgment as a Matter of Law reflects the view that plaintiff was fully apprised not just of the charge but of the evidence based on which BHA charged her theft, notwithstanding the failure to turn over to her the statements of several persons interviewed by defendants' security officer. The Court of Appeals has clearly stated that the case was not one for entry of judgment pursuant to Fed. R. Civ. P. 50. The Court of Appeals, based on plaintiff's testimony, alone, precluded a finding that there could be but one conclusion as to the verdict which reasonable men could have reached. See Otero v. Bridgeport Hous. Auth., 297 F.3d 142, 151 (2d Cir.2002).

In meetings at the office of the Director of BHA, starting on September 11, 1996, which plaintiff attended, though she disclaimed knowledge of what went on other than that she was informed of the charge

and that BHA had substantial evidence to support the charge, there was evidence, not contradicted by plaintiff, that the statements of the principal witnesses against her, Colon and Boyd, were reiterated by them, as per their written statements. Further, plaintiff's union President and business agent, both being obliged to protect her interests, attended. The president, Mr. Carrafiello, testified that all of the investigative material, including the statements taken, were provided to them by the BHA Security Chief, Mr. Mello. He also testified that, in turn, he reviewed the statements and investigative material with plaintiff to assess whether to go forward with her grievance or whether she would resign to preserve her retirement benefits, to which BHA was agreeable.

Contrary to plaintiff's argument, Mr. Carrafiello clearly stated that all of the statements and material on which the charge was based were reviewed with plaintiff prior to her decision to resign. Plaintiff would translate the failure to provide her with copies of the statements into a failure to provide her with the required explanation of the evidence against her. The review of all the accusatory material/statements as testified to by Mr. Carrafiello did not merely provide her with an explanation of the evidence against her but rather provided her with the substance thereof. It is difficult to understand how the provision of such, testified to by plaintiff's representative and not contradicted by her, could be found to fail to constitute due process solely based on plaintiff's claim that she did not receive copies of the statements.

Accepting her claim in that regard as true, BHA has not claimed to the contrary, it exalts form over substance to suggest due process was denied because the statements were not provided when their contents were reviewed with her by her union representatives. All of what the Court of Appeals suggests that plaintiff could have done to defend herself was available to her once the statements, such as that of Mr. Colon, were reviewed with her by Mr. Carrafiello. There is no apparent reason why Mr. Carrafiello's testimony would not be credited, particularly absent a claim by plaintiff that his testimony was untrue.

It is not without significance that after the initial meeting, plaintiff had knowledge of what Colon, Wells and Boyd, the witnesses against her, said, for she knew what to look for to counter their evidence. Thus it would appear that she did not merely know what the charge was but who and what was arrayed against her. While plaintiff asserted she did not get the statements taken by Mello, she is not substantiated in that assertion by any other evidence. The evidence clearly suggests that not only was she informed of the charge, but she was informed as to the sources of the evidence against her and what they said in support of the charge, she was afforded an opportunity to provide counter evidence and only after review of it with her union president was allowed to resign, which she did, her prior termination being vacated. The question was not whether the charge against her was validly substantiated, but whether, before her employment ended by her resignation, she was provided with due process, i.e. knowledge of the charge against her, an explanation (disclosure?) of the evidence against her and an opportunity to be heard.

Defendants' seek vacation of the verdict and a new trial. With respect to the question of liability, a new trial would be in order if the verdict was seriously erroneous or constituted a miscarriage of justice. FED. R. CIV. P. 59; *Atkins v. New York City,* 143 F.3d 100, 102 (2d Cir.1998); *Lightfoot v. Union Carbide Corp.,* 110 F.3d

898, 911 (2d Cir.1997). In passing upon a Motion for a New Trial, a lesser standard is applied than the standard for a judgment as a matter of law. FED. R. CIV. P. 50(a) (proper only if "there is no legally sufficient evidentiary basis for a reasonable jury to find" for the non-movant); *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 133–34 (2d Cir.1998) ("[u]nlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict . . . . a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner"); *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970 (2d Cir.1987).

■ A judgment as a matter of law, or notwithstanding a verdict, lies if "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Song v. Ives Labs.,* 957 F.2d 1041, 1046 (2d Cir.1992) (internal quotation marks omitted). In contrast a new trial should be ordered if the trial court is of the view that "the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." *Id.* at 1047 (internal quotation marks omitted). The Court of Appeals dealt with the issue of a judgment as a matter of law in this case, but noted that the motion for a new trial remained unresolved, to be determined on remand. There is no inconsistency in grant of new trial when a motion for judgment notwithstanding the verdict is not justified. *Network Publ'ns v. Ellis Graphics Corp.,* 959 F.2d 212, 215 (11th Cir.1992) (holding that district court erred in granting JMOL instead of new trial where insufficient proof of damage amount was likely remediable); *Metromedia Co. v. Fugazy,* 983 F.2d 350, 359 (2d Cir.1992)

(proper to prevent "manifest injustice"). Although a jury's credibility evaluations are entitled to some deference, *DLC Mgmt. Corp.,* 163 F.3d at 134, and the court is not to decide the issue on the basis of a different view of the weight of the evidence as opposed to that inherent in the jury verdict, it may assess the weight of the evidence, without viewing it in the best light for the party favored by the verdict, and thus determine whether the verdict, even if sustained by some evidence, is nonetheless seriously erroneous or manifestly a miscarriage of justice. *Song,* 957 F.2d at 1047; *Bevevino v. Saydjari,* 574 F.2d 676, 683–85 (2d. Cir.1978). A new trial may thus be ordered to insure that justice is done. *See Smith v. Lightning Bolt Prods.,* 861 F.2d 363, 370 (2d Cir. 1988).

■ Plaintiff contends that issues of credibility should be left to the jury even on a motion for a new trial, citing *Sorlucco v. New York City Police Dep't,* 971 F.2d 864 (2d Cir.1992). That decision dealt with the credibility of plaintiff, which the trial court apparently rejected in granting, in the alternative, a new trial, without stating a reason for a change of mind from an earlier observation that what was presented was a straight question of credibility. *Id.* at 875. The Court of Appeals reversed for abuse of discretion in granting a new trial where " 'there is no great weight of the evidence in either direction.' " *Id.* (quoting *Williams v. City of Valdosta,* 689 F.2d 964, 976 (11th Cir.1982)). Here the great weight of the evidence is not supportive of the verdict.

Defendants also claim that plaintiff's compensatory damages could not be found in the amount of the jury verdict. They argue that her loss would be limited to amount of wages she could have earned but for her termination, a $300 differential between her weekly income from the

Bridgeport Housing Authority (BHA) and what she earned from her subsequent job at the Kennedy Center. Her testimony was that she earned $18/hour from BHA, $720 for a 40 hour week. Her benefits included vacation time (4 weeks), medical insurance, pension accrual (received $410/month), sick leave (no amount specified) and life insurance. She started at Kennedy in February,1997, but claimed twenty hours/week at first, raised to thirty shortly thereafter but on an unspecified date. She was working full time as of at least June, 1999, which she conceded to be accurate. Her rate started at $9/hour, raised to $10 after a year and $11 a year later. She received one week vacation to start but did not indicate any change. She was allowed sick time and did not indicate any loss resulting from any reduced amount. She did not get life insurance but offered no evidence of incurring any particular expense to replace what she had at BHA. She paid for her medical insurance, $47 per month.

Based on the above, her wage loss would, at $720 per week from September, 26, 1996 to her trial date in December, 2000, for a total of $159,120. From that amount there must be deducted her pension, $410/month to the date of trial, $20,910, and her earnings from Kennedy, $9,360 for the first year, $15,600 for the second year, and $39,187 for the period 2/99 to 12/00, a total of $85,057. That nets at $74,063. To that must be added her vacation loss of three weeks/per year, at $720, from 1966 to 2000, over 4.25 years, for a total of $9,180. Also to be deducted is her medical insurance premium, $47 per month over 51 months (9/96 to 12/00), for a total of $2,397. The resulting out of pocket loss is $85,640. That does not account for the income she derived from doing home inspections, estimated by her to be $2,000 to $5,000 per year, for which she had no documentation having failed to de-clare the earnings on her tax return. A further set off of at least $8,500, or as much as $21,250, for the 4.25 years would reduce her out of pocket loss to a maximum of $77,140 or a minimum of $64,390. Defendants' brief dated February 28, 2001, concedes a back pay loss of $97,220 but their calculation is erroneous in two respects. It assumes she earned $330/week from 2/18/97 to 1/15/01 but her evidence was that she was paid at a lower rate to start and did not work a full week at the start. Further the breakdown discussed above was not presented by defendants.

■ Plaintiff's only other claim of support for the award is that she sustained pain and suffering, obviously an unwarranted claim in the absence of physical injury. However, taken as a claim of mental and emotional distress which is compensable, plaintiff would only be entitled to damages from the denial of due process to the extent such distress is proven and causally related to the due process denial. *Carey v. Piphus*, 435 U.S. 247, 265, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Patrolmen's Benevolent Ass'n v. City of New York*, 310 F.3d 43, 55 (2d Cir.2002). Plaintiff's brief dated February 16, 2001, cites only evidence that she was upset and crying at the September 11, 1996 meeting and that she was shocked at her discharge. The former cannot be found to be causally connected to the due process claim as having occurred prior to that denial. The case presented to the jury did not involve the merit of BHA's claim of the right to terminate her employment. If the discharge that shocked her occurred on September 13, 1996, then that condition could only be found to have lasted until September 26, 1996, to which date her hearing was continued. She then resigned her employment. As ruled by the Court of Appeals, the process by which her employment was reviewed in relation to the

charges against her did not comport with constitutional standards. That process ended on September 26 when her termination was vacated and her employment was concluded by her resignation. The shock at being terminated thus could only have extended from, and be found to have been caused, by her discharge on September 13. There is no testimony of distress caused by the lack of due process nor of symptomatology continuing after September 26. There was no medical treatment for any claim of distress.

The difference between a justified finding of compensatory damages for her out of pocket losses, discussed above, and the $145,900 verdict, cannot be found to be within the range of reasonable compensation for the claimed mental and emotional distress which, giving plaintiff the full benefit of the evidence in support of her claim, the jury could have found causally related to the due process denial. Defendants argue only that absent a specific finding of a compensable amount for pain and suffering, plaintiff may not recover therefor. The verdict form, to which defendants took no exception, made no provision for awarding damages in isolated categories. It thus resulted in a general verdict as to damages as to which defendants' argument has no merit.

Whatever the jury might have calculated as plaintiff's out of pocket losses, the range of which is discussed above, the additional amount necessarily included in the $145,900 verdict, cannot be found to fall within the range of reasonable compensation for the most distress the jury could have credited. If the damage award were the only aspect of the verdict which might be questioned, a maximum justifiable award could be calculated and a new trial ordered in the alternative to plaintiff's accepting a remittitur which would be found, over and above what the jury could, at most, have found were her out of pocket losses, based on the evidence of distress as discussed above, to be in the amount of $10,000. This element of damages is not a matter of the propriety or justification for the vacated termination which was followed by her resignation.

A verdict is properly vacated and a new trial ordered if the verdict is seriously erroneous or constitutes a miscarriage of justice. *Farrior v. Waterford Board of Educ.*, 277 F.3d 633, 634 (2d Cir.2002); *DLC Mgmt. Corp.*, 163 F.3d at 133. In making the required determination, the court "need not view [the evidence] in the light most favorable to the verdict winner." *DLC Mgmt. Corp.*, 163 F.3d at 134. Here the evidence can be questioned under this standard in regard to a finding of denial of due process and an award of $145,900 for out of pocket losses and for distress. Based on the foregoing discussion of the factors underlying those two aspects of the verdict, it is found to be seriously erroneous and if allowed to stand would constitute a miscarriage of justice.

Accordingly the verdict of $145,900 is vacated and a new trial is granted.

II. Motion for Modification of Judgment; Motion for Front Pay, Interest, Fees, Costs

The **grant** of defendants' motion for a new trial (Doc. No. 136) moots the alternative motion for modification of the judgment, which is therefore **denied** (Doc. No. 136), and plaintiff's motion for front pay damages and prejudgment interest (Doc. No. 142), which is also **denied**.

SO ORDERED.