23-212
*Madelaine Chocolate Novelties, Inc. v. Great N. Ins. Co.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of June, two thousand twenty-five.

PRESENT:

> JOSÉ A. CABRANES,
> RICHARD J. SULLIVAN,
> MYRNA PÉREZ,
> *Circuit Judges.*

------------------------------------------------

MADELAINE CHOCOLATE NOVELTIES, INC.,
d.b.a. THE MADELAINE CHOCOLATE
COMPANY,

*Plaintiff-Appellant*,

v.                                                          No. 23-212

GREAT NORTHERN INSURANCE COMPANY,

*Defendant-Appellee.*

_____

For Plaintiff-Appellant:    JAMES R. MURRAY, Blank Rome LLP, Washington, DC (Omid Safa, Blank Rome LLP, Washington, DC; Jared Zola, Blank Rome LLP, New York, NY; David A. Thomas, Blank Rome LLP, Los Angeles, CA, *on the brief*).

For Defendant-Appellee:    JONATHAN D. HACKER, O'Melveny & Myers LLP, Washington, DC (Jonathan Rosenberg, Leah Godesky, O'Melveny & Myers LLP, New York, NY, *on the brief*).

Appeal from a judgment of the United States District Court for the Eastern District of New York (Raymond J. Dearie, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the August 24, 2022 judgment of the district court is **AFFIRMED**.

Madelaine Chocolate Novelties, Inc. ("Madelaine Chocolate") appeals the district court's judgment following a jury verdict in favor of Great Northern Insurance Company ("Great Northern") in an insurance-coverage dispute concerning storm-surge damage caused by "Superstorm Sandy" to Madelaine Chocolate's production facilities. In light of the complicated facts and unusual

procedural history of this case, we begin with a brief summary of the dispute before proceeding to the issues on appeal.

## I. Background

Madelaine Chocolate manufactures candies in a factory located on a narrow strip of land just three blocks from the Atlantic Ocean and one block from Jamacia Bay. In October 2012, Superstorm Sandy inundated the factory with over three feet of saltwater, prompting Madelaine Chocolate to file a claim for more than $53 million in physical damages and economic losses under an insurance policy issued by Great Northern (the "Policy").

Great Northern refused to pay the full claim amount and paid Madelaine Chocolate only about $4 million. In disclaiming coverage, Great Northern invoked the Policy's flood-exclusion provision, which excludes, in relevant part, "loss or damage caused by . . . [the] rising, overflowing[,] or breaking of any boundary, of any . . . body of water . . . , whether driven by wind or not" (the "Flood Exclusion"). J. App'x at 2172. In particular, Great Northern relied on a portion of the Flood Exclusion, commonly known in the insurance industry as an anti-concurrent causation ("ACC") clause, which bars coverage for losses stemming from multiple contributing causes provided that the insurer can demonstrate at least one of those causes is excluded under the Policy. *See id.* (stating the Flood Exclusion applies

3

"regardless of any other cause or event that directly or indirectly . . . contributes . . . to[] the loss or damage"). According to Great Northern, Madelaine Chocolate's damage was caused, at least in part, by wind-driven flooding and was thus excluded under the ACC clause of the Flood Exclusion.

Following Great Northern's denial of coverage, Madelaine Chocolate sued for breach of contract. Madelaine Chocolate contended that Great Northern was required to cover all of its storm-surge damages because its losses were caused by a "windstorm," which is a "specified peril" under the Policy. *See id.* at 59. Although "windstorm" is not defined in the main Policy, the Policy contains a "Windstorm Or Hail Deductible Or Waiting Period" form (the "Windstorm Endorsement") that defines "windstorm" to include "wind-driven rain," *id.* at 2311, and goes on to provide that the definition applies "regardless of any other cause or event that directly or indirectly . . . contributes [to] . . . loss or damage," *id.* Based on this language, Madelaine Chocolate argued that the Windstorm Endorsement provides a basis for coverage or, at the very least, creates an ambiguity that must be resolved in its favor.

The district court disagreed and granted summary judgment in favor of Great Northern on the grounds that the Policy language was unambiguous:

Madelaine Chocolate's damages were caused by a storm surge, which under existing precedents, triggered the Flood Exclusion. According to the district court, the Windstorm Endorsement "simply reiterates the fact that the policy provides for 'wind' damage" and addresses the deductible amount; it does not "provide[] a separate basis for coverage" or "supersede[] the flood exclusion." *See Madelaine Chocolate Novelties, Inc. v. Great N. Ins. Co.*, No. 15-cv-5830 (RJD) (SMG) (GRB), 2017 WL 2954630, at *9–10 (E.D.N.Y. June 30, 2017), *report and recommendation adopted sub nom. Madelaine Chocolate Novelties v. Great N. Ins. Co.*, No. 15-cv-5830 (RJD) (SMG) (GRB), 2017 WL 4280550 (E.D.N.Y. Sept. 26, 2017), *vacated and remanded sub nom. Madelaine Chocolate Novelties, Inc. v. Great N. Ins. Co.*, 752 F. App'x 47 (2d Cir. 2018).

On appeal, we vacated the district court's judgment, concluding that the district court failed to consider that the Windstorm Endorsement contained its own, arguably inverse, ACC clause that applies to "the definition of a covered peril for the entire Policy." *Madelaine Chocolate Novelties Inc.*, 752 F. App'x at 50. We instructed that, "[o]n remand, the [d]istrict [c]ourt must assess whether the Windstorm Endorsement's ACC clause conflicts with, or otherwise creates an ambiguity *vis-à-vis*, the Policy's Flood Exclusion." *Id.*

5

On remand, the district court first found that the definition of "windstorm" in the Endorsement indeed "create[d] an ambiguity vis-à-vis the Flood Exclusion" when applied to "the Policy as a whole." *Madelaine Chocolate Novelties v. Great N. Ins. Co.*, 399 F. Supp. 3d 3, 12 (E.D.N.Y. 2019). It then "consult[ed] extrinsic evidence of the parties' intent to aid its interpretation of the Policy." *Id.* at 13. Because there was extrinsic evidence of intent that could support an interpretation of the Policy that foreclosed coverage, the district court concluded it "need not resort to the doctrine of *contra proferentem* to resolve the Policy's ambiguity as a matter of law." *Id.* at 14. Accordingly, the district court denied the parties' cross-motions for summary judgment and set the case for trial. *See id.* at 14–15.

On July 28, 2022, after a week-long trial, the jury returned a verdict in favor of Great Northern. Madelaine Chocolate thereafter moved for judgment as a matter of law under Federal Rule of Civil Procedure 50 or, in the alternative, for a new trial under Rule 59. The district court denied both motions. Madelaine Chocolate timely appealed.

## II. Motion for Judgment as a Matter of Law

We review a district court's denial of a Rule 50 motion *de novo*. *See Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005). Under Rule 50, a court may set aside a jury verdict if, after a full hearing on an issue during a jury trial, "a

6

reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed R. Civ. P. 50(a)(1). When reviewing a Rule 50 motion, "a court . . . 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Cross*, 417 F.3d at 247 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). "A movant's burden in securing Rule 50 relief is particularly heavy after the jury has deliberated in the case and actually returned its verdict." *Id.* at 248.

Before turning to the evidence itself, we must first address what exactly Great Northern was required to show. At the close of evidence, the district court instructed the jury that its "task [was] to decide, based on the words of the insurance policy and all the other evidence presented at this trial, whether or not Great Northern has proven by a preponderance of the evidence that both parties understood and intended that the insurance policy would not cover losses caused by storm surge." J. App'x at 2093. On appeal, Madelaine Chocolate argues that the evidence offered by Great Northern did not satisfy its "heavy" burden under New York law, which requires that an insurer "show that its construction of the policy is the *only* construction that can fairly be placed upon it." Madelaine Chocolate Br. at 28 (internal quotation marks omitted).

In describing this burden, Madelaine Chocolate primarily cites to cases decided on summary judgment to argue that Great Northern was required to demonstrate that its Policy excludes storm surge losses and "is subject to no other reasonable interpretation." *Channel Fabrics, Inc. v. Hartford Fire Ins. Co.*, No. 11-cv-3483 (JPO), 2012 WL 3283484, at *6 (S.D.N.Y. Aug. 13, 2012); *see also Campanile v. State Farm Gen. Ins. Co.*, 161 A.D.2d 1052, 1054 (3d Dep't 1990). But this language reflects the standard courts apply at summary judgment when a court must draw "all reasonable inferences in th[e] [nonmovant]'s favor." *Channel Fabrics, Inc.*, 2012 WL 3283484, at *4 (quoting *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009)). After making a threshold determination that the contract is ambiguous, the district court is permitted to consider extrinsic evidence of intent. *See Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42–43 (2d Cir. 2006). If summary judgment is denied, as it was here because the extrinsic evidence was inconclusive, then the intent of the parties becomes a question for the jury and "the insurer [must] prove that its interpretation is correct." *Id.* at 43 (internal quotation marks omitted) (describing how "if extrinsic evidence is available but inconclusive, the burden shifts at the trial stage" (internal quotation marks omitted)).

To be sure, New York law imposes a heavy burden on the insurer, who must prove that "its interpretation [of the exclusion] is correct" to avoid application of "the rule of *contra proferentem*, which generally provides that . . . any ambiguity in the policy should be resolved in favor of the insured." *Id.* (alterations accepted and internal quotation marks omitted). But Madelaine Chocolate has not challenged the district court's jury instruction, which effectively incorporated New York's contra-insurer rule by imposing the burden of proof on the insurer, not the plaintiff, to prove that the parties intended for the policy "*not* [to] cover losses caused by storm surge." J. App'x at 2093 (emphasis added); *see, e.g., Catlin Specialty Ins. Co. v. QA3 Fin. Corp.*, 629 F. App'x 127, 130 (2d Cir. 2015) (upholding instruction that "[insurer] bore the burden of proving by a preponderance of the evidence that [its] interpretation . . . [was] the correct one" because "the jury understood the essence of the [contra-insurer] rule: that if it found the evidence inconclusive, it should find in favor of the [insured]" (internal quotation marks omitted)).

Madelaine Chocolate also contends that the jury's verdict is infirm because the jury considered evidence of Great Northern's uncommunicated subjective intent, even though such evidence is not "legally cognizable." Madelaine

9

Chocolate Br. at 32. But while a contracting party's subjective intent is clearly

irrelevant to a court's threshold determination of whether a contract is ambiguous,

*see Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 572–73 (1986), we have permitted

litigants to introduce evidence of the parties' subjective intent when the meaning

of an ambiguous contract becomes an issue for the jury. Put simply, "a party's

subjective understanding, while not controlling, may shed light on the state of [the

parties'] negotiations and could bear on that party's objective actions." *SR Int'l*

*Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 126 (2d Cir. 2006).

Accordingly, the district court did not err in considering Great Northern's

subjective beliefs, as well as the parties' objective conduct, in assessing Madelaine

Chocolate's Rule 50 motion.

Having addressed the proper legal standard and the relevance of Great

Northern's uncommunicated subjective intent, we now turn to whether the trial

evidence was sufficient to support the jury's finding that the Policy was not

intended to cover the storm-surge losses sustained by Madelaine Chocolate after

Superstorm Sandy. Among the evidence considered by the jury was (1)

testimony from two Madelaine Chocolate executives that the company decided

to discontinue its $2.5 million excess-flood coverage in 2001; (2) correspondence

in which Madelaine Chocolate was asked by a third party to disclose its flood insurance and listed only its $3 million in coverage from the National Flood Insurance Program without referencing any flood coverage from Great Northern; and (3) a report sent from a Great Northern loss-control professional to the head of Madelaine Chocolate's insurance program, which contained separate sections for natural hazards, including windstorms and flood hazards.

On appeal, Madelaine Chocolate argues that its decision to discontinue its excess flood insurance does not bear on whether the Policy covers storm-surge losses. But the jury was free to consider this evidence as proof of Madelaine Chocolate's understanding of the storm-surge exclusion. Great Northern similarly relied on the correspondence and report to argue that Madelaine Chocolate never told anyone that it possessed insurance against storm-surge losses, supporting the inference that both parties understood the Policy did not provide such coverage. Based on these facts, and others introduced at trial, we cannot say that there was no "legally sufficient evidentiary basis" for the jury to return a verdict in favor of Great Northern. Fed. R. Civ. P. 50(a)(1). We therefore affirm the district court's judgment on this basis.

11

## III. Motion for a New Trial

In the alternative, Madelaine Chocolate argues that the district court erred in denying its motion for a new trial pursuant to Rule 59. Our caselaw makes clear that a Rule 59 motion for a new trial should be granted only when the district court is convinced that "the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice." *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992) (alterations and internal quotation marks omitted). We review a district court's denial of a motion for a new trial for abuse of discretion. *See id.*

Madelaine Chocolate primarily rehashes its arguments made with respect to its Rule 50 motion that the district court erred by permitting Great Northern to introduce evidence regarding its uncommunicated subjective intent. But again, "a party's subjective understanding, while not controlling, may shed light on the state of [past] negotiations and c[an] bear on that party's objective actions," *SR Int'l Bus. Ins. Co.*, 467 F.3d at 126, and, as explained above, the evidence supported the jury's finding that the parties intended the contract to exclude losses caused by storm surge. We therefore reject the contention that Great Northern's subjective understandings of the Policy terms could have caused "the jury [to] reach[] a seriously erroneous result or . . . the verdict [to be] a miscarriage of justice." *Song*, 957 F.2d at 1047 (internal quotation marks omitted).

12

Madelaine Chocolate also asserts that, based on the law-of-the-case doctrine, the district court should not have permitted Great Northern to offer its interpretation of the Windstorm Endorsement at trial – namely, that it modified the deductibles and waiting periods for windstorm damages and did not supersede the Flood Exclusion. It is true that "[u]nder the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation." *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991). But "the law of the case does not extend to issues an appellate court did not address," *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 606 (2d Cir. 2003) (internal quotation marks omitted), and that is precisely the situation here.

Although our prior decision remanded for the district court to consider the Windstorm Endorsement, we did not resolve the issue of whether the Policy terms were ambiguous, let alone whether the parties intended for the Policy to cover the storm-surge losses. *See Madelaine Chocolate Novelties, Inc.*, 752 F. App'x at 50. As a result, our summary order in no way prohibited Great Northern from arguing at trial that the Windstorm Endorsement was limited to increasing the deductibles and extending the waiting periods for losses caused by windstorms and did not

13

otherwise modify the Policy's scope of coverage. Nothing in our prior ruling precluded consideration of such evidence by the jury at trial. Accordingly, the district court did not err in denying Madelaine Chocolate's motion for a new trial.

*     *     *

We have considered Madelaine Chocolate's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

14