Derrick WILSON, Plaintiff–Appellee,

v.

Nelson AQUINO, same being an officer in the employ of the City of Syracuse Police Department, in his individual and official capacity, Ralph Bowering, same being an officer in the employ of the City of Syracuse Police Department, in his individual and official capacity, Michael Emond, same being an officer in the employ of the City of Syracuse Police Department, in his individual and official capacity and Brian Lendy, same being an officer in the employ of the City of Syracuse Police Department, in his individual and official capacity, Defendants–Appellants.

City of Syracuse, James T. Foody, in his official capacity as Chief of Police and Chistopher Lundborg, same being an officer in the employ of the City of Syracuse Police Department, in his individual and official capacity, Defendants.

No. 05–7053–cv.

United States Court of Appeals, Second Circuit.

May 24, 2007.

Mary Anne Doherty, Assistant Corporation Counsel (Nancy J. Larson, Assistant Corporation Counsel, on the brief) for David M. Garver, Corporation Counsel, City of Syracuse, Syracuse, NY, for Appellants.

Anthony Ofodile, Ofodile & Associates, P.C., Brooklyn, NY, for Appellee.

PRESENT: Hon. THOMAS J. MESKILL, Hon. REENA RAGGI, and Hon. RICHARD C. WESLEY, Circuit Judges.

## SUMMARY ORDER

Plaintiff Derrick Wilson sued defendants Nelson Aquino, Ralph Bowering, Michael Emond, and Brian Lendy, four members of the City of Syracuse Police Department, pursuant to 42 U.S.C. § 1983 for subjecting him to a non-consensual strip/body-cavity search in violation of his Fourth Amendment right to be free from unreasonable searches and seizures.[1] After a jury trial, Wilson was awarded $5.00 in nominal damages and a total of $25,000 in punitive damages from the various defendants. On appeal, defendants argue that (1) the district court erred in holding the search illegal as a matter of law, (2) the court further erred in rejecting their qualified immunity defense as a matter of law, (3) jury instructions regarding punitive damages were misleading, (4) the evidence was insufficient to support a punitive award, and (5) the district court improperly permitted the jury to hear evidence of Police Department disciplinary measures against defendant Lendy. We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision.

### 1. *The Legality of the Search*

Defendants submit that the district court erred in holding the challenged search illegal as a matter of law because (1) the jury's rejection of Wilson's false imprisonment claim necessarily meant that the search was conducted incident to a lawful arrest, and (2) there was a factual dispute as to whether the strip search also

1. Plaintiff also named as defendants the City of Syracuse, James T. Foody, and Christopher Lundborg, but does not contest their dismissal from this case.

included a manual examination of body cavities. Having reviewed the record *de novo*, *see Cross v. New York City Transit Auth.*, 417 F.3d 241, 248 (2d Cir.2005), we agree with the district court that the search was illegal as a matter of law.

Assuming defendants lawfully arrested Wilson, the reasonableness of any search incident thereto still depended on the manner in which it was conducted. *See Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *see also Swain v. Spinney*, 117 F.3d 1, 6 (1st Cir.1997) (observing that "not ... all possible searches of an arrestee's body are automatically permissible as a search incident to arrest"); *Posr v. Doherty*, 944 F.2d 91, 97–98 (2d Cir.1991); *Weber v. Dell*, 804 F.2d 796, 800 (2d Cir.1986). "A strip search is by its very nature a highly intrusive invasion," *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir.1991) (internal quotation marks omitted), and, as such, requires particular justification, *see Bell v. Wolfish*, 441 U.S. at 559, 99 S.Ct. 1861 (describing totality-of-the-circumstances analysis for reasonableness of strip search, taking into account "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted").[2]

■ Defendants submit that a strip search was necessary in Wilson's case to prevent him from destroying drugs concealed on his person. Warrantless searches incident to arrest have long been deemed reasonable in order to disarm a defendant and prevent his destruction of evidence. *See Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In this case, however, two

routine searches of Wilson's person at the arrest scene failed to reveal his possession of any weapons or contraband. Defendants' insistence that they, nevertheless, thought Wilson might be concealing drugs on his person and might be able to destroy those drugs even while handcuffed was, at best, speculative. While defendants note that a trained narcotics dog appeared interested in the interior of Wilson's car, they point to no evidence indicating that they used the dog to screen Wilson himself, much less that the dog demonstrated any interest in Wilson. Moreover, they point to no exigent circumstances indicating a need to transport Wilson to a private office location rather than to the police precinct to conduct any further search. Under these circumstances, no reasonable jury could conclude, even from the defendants' own version of events, that their justification for or manner of conducting the challenged strip search was reasonable.

### 2. *Qualified Immunity*

"Qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Holeman v. City of New London*, 425 F.3d 184, 189 (2d Cir.2005) (internal quotation marks omitted). "The objective element of this test requires the court to look beyond the generalized constitutional protection, such as the right to be free of unreasonable searches and seizures, and to determine whether the law is clearly established in a more particularized sense." *Kerman v.*

---

**2.** "A strip search with body-cavity inspection is the practice that 'instinctively' has given the Supreme Court 'the most pause.'" *N.G. v. Connecticut*, 382 F.3d 225, 233 (2d Cir.2004) (quoting *Bell v. Wolfish*, 441 U.S. at 558, 99

S.Ct. 1861). For purposes of this appeal, however, we view disputed facts in the light most favorable to defendants and assume that no manual body-cavity inspection occurred.

*City of New York,* 261 F.3d 229, 236 (2d Cir.2001). Defendants submit that, without knowing whether a jury would credit Wilson's version of the search or theirs, material issues of fact precluded rejection of their qualified immunity defense as a matter of law. We disagree.

■ It has long been clearly established that strip searches require particular justification. *See Bell v. Wolfish,* 441 U.S. at 559, 99 S.Ct. 1861; *Weber v. Dell,* 804 F.2d 796. Where, as in this case, defendants acknowledge that they had twice conducted a routine search of the defendant that yielded no weapons or contraband and that no dog alert or other circumstance supported a reasonable belief that the defendant was nevertheless still concealing drugs on his person, and where defendants advance no reason for needing to transport Wilson to a private office rather than the police precinct for any further examination, we agree with the district court that it was objectively unreasonable for the defendants to think that their justification for and method of conducting the challenged strip search was lawful.

### 3. *Jury Instructions*

Defendants fault the district court for failing to employ language derived from *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), in charging punitive damages. In fact, trial courts enjoy considerable "discretion in the style and wording of jury instructions so long as the instructions, taken as a whole, do not mislead the jury as to the proper legal standard, or adequately inform the jury of the law." *Boyce v. Soundview Tech. Group, Inc.,* 464 F.3d 376, 390 (2d Cir. 2006) (citation omitted). In this case, the jury instructions were not misleading.

■ "Punitive damages are available in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Lee v. Edwards,* 101 F.3d 805, 808 (2d Cir.1996) (quoting *Smith v. Wade,* 461 U.S. at 56, 103 S.Ct. 1625). The district court instructed the jury that it could award punitive damages against a defendant "if you find that the defendant acted maliciously or wantonly." Trial Tr. at 541. It explained: "A defendant acts maliciously if his conduct is prompted by ill will or spite toward the plaintiff. A defendant acts wantonly if he acts in a reckless or callous disregard of, or indifference to, the rights of plaintiff." *Id.* This wording is not substantively different from that set forth in *Smith v. Wade.*

Nor did the district court err by prefacing its explanation of the law with an instruction that the jury might "conclude that Wilson is entitled to an award of punitive damages ... if" it found the defendants had breached the relevant standard. Trial Tr. at 541. Although defendants fault this instruction for not clearly stating that, if the jury did *not* find such a breach, no punitive damages were warranted, we conclude that when the instruction is read as a whole, it adequately informed the jury of its responsibility.

### 4. *Evidence Supporting Punitive Damages*

■ Defendants' sufficiency challenge to the punitive damages award merits little discussion. Despite the verdict in defendants' favor on Wilson's false arrest and excessive force claims, the jury could reasonably have found that defendants' illegal strip search was conducted out of evil motive or intent, or that defendants acted recklessly or callously. *See Smith v. Wade,* 461 U.S. at 56, 103 S.Ct. 1625. Wilson testified that (1) he was familiar with the defendants prior to the incident; (2)

defendants verbally abused him with obscenities suggesting that they were strip searching him because he was a drug dealer without regard to any belief that he was then in possession of drugs; (3) each defendant participated in punching and kicking him in the course of forcibly removing his clothes; and (4) at least one defendant physically taunted Wilson during the strip search. Drawing all inferences in Wilson's favor as we are obliged to do in reviewing a sufficiency challenge, this evidence was sufficient to support a jury finding that the defendants, individually and as a group, acted with evil motive or intent, or at least recklessly or callously, in conducting the strip search.

### 5. Evidence of Disciplinary Proceedings

■ Finally, defendants contend that the district court erred in allowing the jury to hear that defendant Lendy had been disciplined by the City of Syracuse Police Department. This testimony was elicited to impeach Lendy's credibility insofar as he claimed that he thought his challenged actions comported with police department rules and regulations. Indeed, the district court explicitly admonished the jury that the testimony could not be considered for any purpose other than credibility. The admission of the evidence under these circumstances fell well within the district court's considerable discretion. *See United States v. Garcia,* 413 F.3d 201, 210 (2d Cir.2005) (emphasizing that "[w]e review a district court's decision to admit evidence for abuse of discretion, and we will reverse only if an error affects a 'substantial right,'" *i.e.,* if it had a " 'substantial and injurious effect or influence' on the jury's verdict" (citations omitted)). In any event, even if there had been any error, it was necessarily harmless because the district court had already concluded that the search was illegal as a matter of law.

For the foregoing reasons, the judgment of the United States District Court for the Northern District of New York, filed on March 2, 2006, is AFFIRMED.